UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────x

RAYMOND ANTHONY JOAO,

                Plaintiff,

     - against -                       05 Civ. 1037 (CM) (MDF)

CENUCO, INC.,

                Defendant.

───────────────────────────────────────x

MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

     Plaintiff Raymond Anthony Joao is the inventor and owner of United States Patents Nos. 6,587,046, 6,542,076, and 6,549,130. In plain English, the patents-in-suit cover apparatuses and methods for transmitting video information to remote devices and/or over the Internet. Defendant Cenuco, Inc. sells various video monitoring products and services. In order to facilitate business discussions between the parties, including Cenuco's possible acquisition of a license to use Joao's patented technology, Cenuco and Joao entered into a "Confidentiality/Non-Disclosure Agreement," dated November 4, 2004 (the "Agreement").

     For several months after execution of the Agreement, Joao attempted to sell Cenuco a license. No agreement was reached and no license was issued. On February 1, 2005, Joao filed the instant complaint, under the Patent Laws of the United States, Title 35 of the United States Code, alleging that Cenuco is infringing the patents-in-suit.

     Cenuco has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), on the grounds that the Agreement contained an express covenant not to sue for

infringement of the patents, and that by signing it, Joao released all possible infringement claims against Cenuco. For the reasons discussed below, I find that the Agreement was not a covenant not to sue (express or otherwise). Accordingly, Defendant's motion is denied.

**Discussion**

1. Standard for Motion to Dismiss

For purposes of analyzing a motion to dismiss, the pleadings should be read in the light most favorable to the non-moving party, and the plaintiff's allegations as to the material facts should be taken as true. See Albright v. Oliver, 510 U.S. 266, 267, 114 S. Ct. 807, 810, 127 L.Ed.2d 114 (1994); Cooper v Pate, 378 U.S. 546, 84 S. Ct. 1733 (1964); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1991), cert. denied, 504 U.S. 911 (1992). Dismissal under Fed. R. Civ. P. 12(b) is appropriate, therefore, only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed.2d 59 (1984)). Thus, a court must deny a defendant's motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Stewart v. Jackson & Nash, 976 F.2d 86, 87 (2d Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering a motion to dismiss, the court generally must limit its analysis "to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). Documents and statements that are not attached to or quoted in the complaint itself but that are essential to its allegations, however, may be considered on a motion to dismiss without converting it into one for summary judgment. Cortec Industries, Inc. v. Sum Holding

2

L.P., 949 F.2d 42, 47 (2d Cir. 1991). Since determination of defendant's motion to dismiss turns on whether plaintiff executed a valid covenant not to sue, I deem the Agreement an essential document, examination of which does not convert this motion into one for summary judgment.

2. Construction of the Agreement

   a. *Choice of Law*

As a threshold matter, I note that neither party directly addresses the issue of what law governs construction of the Agreement. Both parties' briefs assume that New York law governs, and this is enough to settle the matter.[1] See Golden Pacific Bancorp v. Federal Deposit Ins. Corp., 273 F.3d 509, 514 n.4 (2d Cir. 2001) (citing Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000)). Indeed, the fact that the parties agree on the application of New York law indicates to the Court that neither party actually believes the Agreement releases any claims of patent infringement.[2]

---

[1] While Defendant cites several federal cases for the proposition that releases of patent infringement claims are common, its discussion of the construction of the Agreement relies entirely on New York case law. (Def. Mem. at 3-4.) Similarly, the section of Plaintiff's brief dealing with construction of the Agreement relies only on one New York case and three federal cases applying New York law. (Pl. Mem. at 4-5.)

[2] If Defendant really thought the Agreement waived a patentee's right to sue for infringement, it would have raised choice of law questions. In Artvale, Inc. v. Rugby Fabrics Corp., 363 F.2d 1002, 1006-09 (2d Cir. 1966), the Second Circuit devoted a lengthy discussion to the question of whether state or federal law would govern the construction of a release of patent infringement claims, given the unusual mix of federal patent law and state contract construction issues. (The Artvale court concluded that the result would be the same under either federal law or New York State law and so did not resolve the issue.) The issue is not mentioned by either party. Indeed, Defendant's discussion of several federal patent cases – including Artvale – presumes, without any discussion of choice of law issues or the New York State contract elements that form the basis of Defendant's brief, that the elements of a valid covenant not to sue have been met. (Def. Mem. at 4.) See also discussion *infra* at pp. 6-8.

b. *New York Law*

Covenants not to sue are expressly permitted under New York law. Kamfar v. New World Restaurant Group, Inc., 347 F. Supp. 2d 38, 50 (2d Cir. 2004) (citing Wilder v. Pa. R.R. Co., 245 N.Y. 36, 39, 156 N.E. 88 (1927); McMahon & Co. v. Bass, 250 A.D.2d 460, 461, 673 N.Y.S.2d 19, 21 (1st Dep't 1988); Colton v. New York Hosp., 98 Misc.2d 957, 963-66, 414 N.Y.S.2d 866, 871-73 (N.Y. Sup. Ct. 1979)); Sparacio v. Sparacio, 283 A.D.2d 481, 483, 724 N.Y.S.2d 204, 206 (2d Dep't 2001). If two parties sign a covenant not to sue each other, then a dispute arising out of the conduct covered by that agreement cannot provide the basis for a justiciable controversy, and the case must be dismissed. Colton, 98 Misc.2d at 965, 414 N.Y.S.2d at 873.

Because the law disfavors agreements intended to absolve a party from the consequences of its wrongdoing, however, releases and covenants not to sue are subject to the "closest of judicial scrutiny" to determine the intent of the parties.[3] Golden Pacific Bancorp v. Federal Deposit Ins. Corp., 273 F.3d 509, 515 (2d Cir. 2001)(applying New York law and quoting Abramowitz v. N.Y. Univ. Dental Ctr. Coll. of Dentistry, 110 A.D.2d 343, 494 N.Y.S. 2d 721, 723 (2d Dep't 1985)); Information Superhighway, Inc. v. Talk America, Inc., 274 F. Supp. 2d 466, 470 (S.D.N.Y. 2003). For a document to constitute a release from liability, it must contain an explicit, unmistakable and unequivocal statement by one party that it intends to abandon its

---

[3] I note that Defendant uses both "covenant not to sue" and "release" to describe the Agreement. (See, e.g., Def. Mem. at 1.) They are not exactly the same thing – a release is retrospective while a covenant not to sue bars future claims – however the standards governing construction are the same, since each constitutes a waiver of the right to sue. Colton v. New York Hosp., 98 Misc.2d 957, 963-66, 414 N.Y.S.2d 866, 872-74 (N.Y. Sup. Ct. 1979) (noting that many cases also blur the distinction between the two types of waivers). Because I find the Agreement does not contain any waiver of infringement claims, past or future, it is immaterial whether Defendant meant one or the other, or both.

4

right to prosecute a present or future claim against the other party. Golden Pacific Bancorp, 273 F.3d at 515 (applying New York law and reversing the district court's grant of summary judgment on basis that contract language did not create an unambiguous release); Schneider v. Revici, 817 F.2d 987, 993 (2d Cir. 1987)(applying New York law and refusing to enforce agreement where it was not called a covenant not to sue and the liability provision could have been interpreted several ways).

      *c.*      *The Agreement Does Not Contain a Covenant Not To Sue or a Release*

The Agreement provides, in pertinent part:

WHEREAS, Joao is the owner of certain U.S. Patents [the patents-in-suit];

WHEREAS, Cenuco and Joao. . . are each desirous of jointly exploring areas of mutual interest and benefit and each desire to engage in a full and frank discussion of ways in which they can work together to their mutual benefit; and

WHEREAS, such discussion(s) may result in one or both of the Parties disclosing information which may be prejudicial to Cenuco and/or to Joao,

NOW THEREFORE, Cenuco and Joao agree as follows:

1. The Effective Date of this Agreement shall be the date on which the last party to execute the Agreement does so;

2. Discussion(s) may include, among other things: [Cenuco's acquiring a license; the parties forming a partnership; and/or Cenuco's providing products and services to a company formed by Joao.]

3. The Company and Joao will not disclose to each other any Confidential Information regarding any intellectual properties or trade secrets and the Parties agree that any such information disclosed will not be deemed to be Confidential Information.

4. [A separate Confidentiality Agreement will be executed if Confidential Information needs to be disclosed.]

5. The Parties agree that any and all discussions will be treated as Privileged Communications and the Parties agree that *nothing discussed or disclosed by one party will be used by the other party as the basis for any claim*

*or defense if any subsequent dispute should ever arise between the Parties*. For example, the Parties agree that, notwithstanding the fact that there is no dispute or action pending between them at the time of this Agreement, all discussions will be maintained in confidence and will be considered Privileged and protected under Federal Rules of Evidence Rule 408 if a dispute should ever arise between the parties.

      6. Notwithstanding information available in the public domain, *nothing communicated or exchanged by the Parties pursuant to this Agreement and subsequent discussions shall be the subject or basis for any assertion of a claim and/or defense by one party against the other*.

      7. [Cenuco and Joao agree not to divulge confidential information.]

(Confidentiality/Non-Disclosure Agreement, dated Nov. 4, 2004, attached as Exh. B to the Declaration of Jennifer F. Beltrami in Support of Cenuco's Motion to Dismiss Plaintiff's Amended Complaint, dated April 22, 2005 (emphasis added).)

The Court quotes the Agreement liberally in order to show that there is no provision, express or otherwise, releasing any infringement claims Joao might have against Cenuco. The Agreement states only that nothing discussed pursuant to the Agreement can form the basis for a claim or defense should a dispute subsequently arise between the parties. Defendant's position – that, because the patents were discussed during the negotiations, claims relating to the patents (including infringement claims) were waived – is utter nonsense. This Agreement governed the use of confidential information that was to be disclosed during settlement/licensing negotiations. While it is entirely possible that the terms of the Agreement will influence these proceedings by prohibiting the introduction into evidence of discussions the parties sought to protect, I see no basis whatever for concluding that Joao intended to release claims for patent infringement when he signed this document.[4] He was trying to license the patent. No one would seriously entertain

---

[4] Because I conclude that the Agreement does not contain any waiver of infringement claims, I need not reach Plaintiff's argument that the Agreement is void for lack of consideration.

the possibility of taking a license if infringement claims had already been released. The lack of any specific reference to the release of infringement claims, and the fact that the parties contemplated future litigation (which, in this context, clearly would include infringement claims) underscores this conclusion.

In addition, while not dispositive, the title of the Agreement itself supports my conclusion: the parties chose to call it a "Confidentiality/Non-Disclosure Agreement," and, in the absence of any provision expressly releasing claims, I have no occasion to treat it as anything other than that. See Schneider, 817 F.2d at 993.

Finally, I note that while the parties cite New York law for construction of the Agreement, Defendant cites Artvale, Inc. v. Rugby Fabrics Corp., 363 F.2d 1002 (2d Cir. 1966) (as well as other federal cases), for the proposition that a patent infringement complaint must be dismissed where the parties have signed a settlement agreement containing a covenant not to sue. See id. at 1003-05; Def. Mem. at 4. Defendant states the proposition correctly. However, Artvale has no relevance here. Unlike the present Agreement, the *settlement agreement* in Artvale provided an *express covenant not to sue* for patent infringement. The plaintiff in that case had signed an agreement stating that it, "agrees not to bring suit against [defendants] for

---

(See Pl. Mem. at 10-11.) It is worth noting, however, that Plaintiff's argument focuses on the fact that, if the Agreement were construed as a covenant not to sue, Plaintiff had not received anything of value in exchange for the release of claims. Since I find the Agreement is only a confidentiality agreement, however, Plaintiff's argument does not work: the Agreement actually contains several provisions, quoted above, prohibiting either party from disclosing information discussed. Mutual promises do constitute valid consideration. See Strobe v. Netherland, Co., 245 A.D. 573, 576 (4th Dep't 1935 (noting that it is well settled that mutual promises constitute valid consideration); see also Anonymous v. Anonymous, 784 N.Y.S.2d 918 (N.Y. Sup. Ct. 2004) (citing Strobe, among other cases, and noting that, "Consideration is defined as some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.") Thus, the Agreement is supported by consideration and would not be invalidated on that basis.

infringement, or otherwise involve them in litigation under the patent in suit because of their making, selling or using such . . . materials." There is no language even remotely similar to this in the instant Agreement, which, as noted above, is merely a confidentiality agreement – not a settlement agreement or a release.

In fact, because I conclude that the Agreement is merely a confidentiality agreement, and because there is nothing in the language of the Agreement implicating patent law or any waiver of infringement claims, the body of cases discussing the applicability of covenants not to sue in patent infringement cases is irrelevant. See, e.g., Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995) (holding that plaintiff's unconditional agreement not to sue defendant for infringement rendered noninfringement and invalidity counterclaims nonjusticiable); Apotex Inc. v. Pfizer Inc., No. 04-1463, 2005 U.S. App. LEXIS 5930 at *1 (Fed. Cir. Apr. 11, 2005) (citing Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999) (finding covenant not to sue divests trial court of jurisdiction over declaratory judgment action)).

Defendant has cited no language in the Agreement itself indicating that plaintiff intended to waive any infringement claims it might have against Cenuco. In the absence of any express provision waiving plaintiff's claims for infringement, therefore, the Agreement provides no basis for dismissing this infringement case.

**Conclusion**

For the reasons stated above, Defendant's motion to dismiss the complaint is denied

**Conclusion**

For the reasons stated above, Defendant's motion to dismiss the complaint is denied (Docket # 14). The case remains open.

This constitutes the decision and order of the Court.

Dated: June 30, 2005.

_____
U.S.D.J.

BY FAX TO ALL PARTIES